We move to the fourth case this morning, Taylor v. Village of Dalton.  Morning, your honors. May it please the court, counsel. My name is Josh Friedman and I represent the plaintiff appellant, Gordie Taylor, who appeals the district court's grant of summary judgment for the defendants in this case. Your honors, in the words of Ortiz v. Werner Enterprises, Chief Terry Hughes, the individual who fired Mr. Taylor, did not much like black people, and he forced Mr. Taylor out the door because of his race. There is ample evidence from which a reasonable fact finder could conclude that Mr. Taylor's race caused his discharge. This evidence includes the repeated, and in many cases admitted, use of vile racial slurs, not only by Mr. Hughes, but also by Taylor's two lieutenants, defendants Manning and Duvall, who were intimately involved in the decision to discharge Taylor. You're also threatened by these same defendants. I'd like to zero in, if I might, on page five of the red brief, because there, the Village quotes McCulloch as saying that he had initiated an investigation because Taylor failed to properly obey a legal order to immediately submit to an alcohol breathalyzer, hand splash, or blood test. Now, of course, Taylor did immediately submit to a breathalyzer test, and he passed. What should we make of this? It seems to be evidence from which a jury could infer that the charge of insubordination was trumped up. Did you argue that this was evidence that Taylor was never insubordinate, or did you concede that McCulloch genuinely thought he was insubordinate? Your Honor, you were cut off. I'm not sure your question is whether we argued below whether Taylor was not insubordinate or whether, I'm sorry. Or whether McCulloch genuinely believed he was insubordinate. Well, the argument, Your Honor, below was that Mr. Taylor was not insubordinate based on not only the fact that he volunteered to take the test immediately, as acknowledged by Defendant Manning, that the order did not indicate that it had to be a blood test. The collective bargaining agreement did not order that it would be a blood test. That Mr. Duval, who we call the chief persecutor in this case, advised Hughes that Mr. Taylor was insubordinate, but Mr. Duval wasn't even on duty on the day in question. That Mr. Hughes had made up his mind essentially, prior to even becoming chief, that Gordy was guilty and he used the words scuttlebutt and rumor to support what he thought was an investigation. Hughes also didn't speak, didn't bother to speak to Manning or McCulloch, the two best people in a position to know what happened that day. Also that Hughes knew that Taylor had a pending complaint about race discrimination documented in McCulloch's notes. Against Duval, the individual accused him of insubordination and he didn't bother to investigate. McCulloch admitted in his deposition that he did not recommend that Taylor be discharged. Hughes admitted no one from the village was calling for his discharge, and Hughes also admitted that he didn't have to fire him. It was solely his choice. So, Your Honor, we argue that based on that, there was no insubordination here and I think equally that Hughes did not honestly believe that he was insubordinate. I'm sorry, does that address your question? Yes. Okay, thank you, Your Honor. Yeah. So, Your Honor, when these facts are viewed in the light most favorable to Mr. Taylor, the conclusion is inescapable. Hughes did not like black people. He vowed that blacks would be gone from his department and he made good on that threat by firing Taylor. The district court, however, ignored this inescapable conclusion because it relied on the indirect direct evidentiary framework that was rejected by this court in Ortiz. The district court wrote that, quote, without some evidentiary factual link connecting Hughes' bigotry to his decision, a jury could not conclude that the termination was illegally motivated. And, quote, Hughes' racist comments were not made around the time of the termination decision or in reference to it. Citing Egon Muwan versus Cook County Sheriff's Department 602F3-485. In fact, this very second passage I just cited from Egon Muwan, relying on the district court, cites in turn to Hemsworth versus Quotesmith 476F3-487, which case was expressly overruled by Ortiz. In other words, the district court, although sub salientio, the district court required a direct evidentiary link between Hughes' racial animus, admitted racial animus, and the discharge. In other words, they required, in the words of Ortiz, the fabled employer who admits to firing an employee because of his race. This is the identical error that the district court made in Ortiz. In Ortiz, the district court noted that despite the fact that there was ample record evidence of racial slurs by the decision maker, because those slurs did not have anything to do with plaintiff's discharge, plaintiff could not make out a direct evidence case. And Ortiz says, no, wait a minute here. You don't take this evidence here, wall it off, and this evidence here, and wall it off, and you don't have a case. The court in Ortiz, although it didn't really announce a new standard, it reached back several, 20 years or so, to go to the conclusion that you take all the evidence together. You take the animus evidence, you take the questions surrounding the discharge, you put it in one pile, and you view it as a whole. Evidence is evidence, and all evidence must be placed in a single pile and evaluated as a whole. And that is done here. We have evidence. One, an individual, three individuals, the three prime movers of this decision, made racist statements, much of which was admitted. Second, Hughes and Manning, excuse me, Hughes and Duvall said, you all don't belong here, referring to black people, and you will be gone. He made good on that threat. The fact that there was not a direct evidentiary link, the fact that Duvall and Hughes were clever enough not to state, yes, I'm firing you because of your race, does not change the fact that a reasonable jury could look at all this evidence and make a very reasonable inference that Hughes did not like black people, and that's why he fired Mr. Taylor. On the issue of harassment, Your Honor, Mr. Taylor also has a racial harassment claim, and the district court acknowledged that there was ample evidence of racial hostility that would have been sufficient to avoid summary judgment. The only issue the district court raised in dismissing that claim was that there were no overt acts of racial hostility within the 300-day limitations period, unless his claim was untimely. I think, Your Honor, the district court is making the same analytical error that it made in dismissing the termination case because it walled off the evidence. The case law, as I've cited on the harassment case, says, no, even if there's no overt evidence of discrimination within the limitations period, you look at the entire period. You can go beyond the 300-day period. You look at the entire context. You look at the gestalt, I guess you could say, and if you can find that the non-overt acts of racism are part and parcel of the overt acts, even if there is no overt acts within the 300-day period, there could still be a finding of racial harassment. But doesn't that eliminate the 300-day requirement? No, Your Honor. I believe it's the Shanoff case, and that was followed up by the Morgan case, that says, as long as there's an act within the 300-day period, you still have to show that it's linked to some pattern of conduct, which I believe we've made here, that there's sufficient evidence to find a case of harassment and that it's timely. I see I'm into my rebuttal time, so I'll ask that the court reverse the district court's decision. Thank you. Thank you, counsel. Mr. Murphy? At least the court, counsel made two serious misstatements in response to Judge Rovner's inquiry. First, the collective bargaining agreement requires a blood or alcohol test, because the contract requires that the test be subject to confirmation, and one cannot confirm a breathalyzer test. So the contract does require blood or alcohol. Secondly, McCulloch, the former chief who ordered Mr. Taylor to take the examination, is African-American. Third, Mr. Taylor specifically admitted that he made a serious error with respect to the insubordination. Document 83 is plaintiff's response to our summary judgment statement of facts. Paragraph 36, I inquired of Mr. Taylor. Okay, did you consider yourself at risk for discipline in this matter? Yes. You intentionally refused to take the blood draw, right? Yes. And you know that refusing a direct order from the fire chief is a serious matter, isn't it? Answer, yes. Terry Hughes. My understanding, Mr. Murphy, is that you can take the breathalyzer and or the blood test, and he did take the breathalyzer. The court will review Exhibit 12, which is in the record, which is a March 11 statement from Mr. Taylor, where he was writing to his union representatives, and at the last four lines of that, he talked about, he met with union employees, quote, to discuss why I refused the blood test. I explained that I'm scheduled to get my blood drawn in a week by my physician, and that it was unnecessary to get my blood drawn for an alcohol test. Jerry, meaning former Chief McCulloch, African-American, then stated that because to my refusal of the blood test, he felt it was insubordination and placed me on administrative leave until further notice. You're still not responding to my question, I'm afraid, or not to my satisfaction at any rate. He, the legal order, as it seems to be, is that you have to submit to a breathalyzer and slash or, or blood test. Your Honor is looking at the notice of interrogation, and the notice of interrogation used the and slash or language, but the contemporaneous statements by both Mr. McCulloch and Mr. Taylor make it clear that the order was to take a blood test, Exhibit 11. The material question is what's required by the CBA. What is required by the CBA is a test that is subject to confirmation. Why is that required, Your Honor? Because if a union person submits- A sample that can be retested. A sample that can be retested to confirm. So it, so the contract requires a confirmatory test. Not, does not give the employee the right to run off into the emergency room and have a breathalyzer test taken for it. But that leads to Mr. Hughes. Mr. Hughes inherited this problem. I'd like to ask you about Mr. Hughes, Mr. Duval, and Mr. Manning. Is there any evidence that they ever changed their views about African Americans after using those vile, racist words and saying that African Americans did not belong in the department? Because for summary judgment purposes, would there be any reason not to infer that they still held racial animus a year or two later? So is there any evidence that they changed their views? Yes, there are at least three reasons to show how Mr. Chief Hughes's decision was not racially motivated. The first, it's undisputed by plaintiff that Mr. Taylor and Mr. Hughes were friends. Secondly, it is undisputed that Mr. Hughes was concerned that his friend Gordy Taylor had a drinking problem. That is why he initially offered Mr. Taylor the opportunity to enter into what's commonly referred to an LCA, or a last chance agreement. But is there any objective evidence that he had an alcohol problem? Because he seems to have passed the one test given at a time when a co-worker claimed he smelled of alcohol. Well, there were three separate occasions where there was a smell of alcohol in the firehouse connected with Mr. Taylor. But of course, the point for Title VII is did Mr. Hughes believe that Mr. Taylor may have had a drinking problem and therefore was seeking to help him by negotiating this last chance agreement, which would allow for him to just take a couple of days off work, go to the EAP. Even though he spoke of African-Americans in the most disparaging way, I know you maintain they were friends, but I think that the attitude kind of belied that. The only reference from Hughes was undated years earlier and had nothing to do with Mr. Taylor and was nowhere near contemporaneous to the decision that Mr. Hughes made. Logic tells us that if Mr. Hughes was hell-bent on firing Mr. Taylor because of his race, he would not have offered not only one, but a second last chance agreement, which would have allowed him to return to the job. Plaintiff admits that Hughes begged him, please, Gordy, take the deal. You're in for a $15,000 raise. Don't blow it. Insubordination is a serious thing. Work with us on this. Taylor refused not once but twice. That in our mind refutes the concept of discrimination. Now, plaintiff mentions Ortiz. What Ortiz does not change is McDonnell Douglas. And McDonnell Douglas says that as factor number two, if an employer posits a legitimate, non-discriminatory reason, that it's up to plaintiff to show evidence of pretext. And again, please recall, and Your Honor just wrote about this a couple months ago in the Farrell v. the School District case, if there's no evidence of pretext, then whether it was a good decision, bad decision, or wrongful decision, it's not a racially motivated decision. That's the essence of summary judgment in this context, and Ortiz hasn't changed that. Well, Mr. Taylor argues that the reason for the firing or the proffered reason for the firing was flimsy. And this is why the evidence about what the collective bargaining agreement requires becomes critical, because the insubordination charge turns on whether he was in his rights and refusing to take the blood test and taking a breathalyzer in the alternative. But if the collective bargaining agreement required the blood test, then that was an act of insubordination and it was not a flimsy excuse for firing him. That is an undisputed fact, what the CBA says. And it's undisputed that the union considered that to be a serious violation. So the plaintiff has not offered any evidence to overcome the legitimate, non-discriminatory reason set forth by the employer for the action. On the issue of harassment, the last comment ascribed to anybody, Hughes was only one, but the last comment ascribed to anybody was well over a year before February of 13. I don't see a problem with that, let me tell you. For me, you're barking up the wrong tree on that, because if there's animus and if there's all this racist language going on for summary judgment purposes, there's no reason to infer that they didn't still hold those feelings a year or two later. So, I mean, that's a problem. We believe this Court's addressed that problem by requiring comments that are at least somewhat contemporaneous to the decision. That has been repeated several times by this Court in a number of cases. I would respectfully submit that everything pivots back then to the decision by Hughes. And if you want to fire somebody because of their race, you are not going to give somebody two separate opportunities to come back to work. According to plaintiff's theory, they had a golden opportunity to fire Taylor based on race. Well, hey, the black chief said he was insubordinate. Well, just follow that guy's recommendation. But Hughes exercised compassion in the face of a violation. And in our mind, the district court correctly found that when the chief is worried about somebody's drinking problem, offers them EAP, takes the EAP recommendation out of the suspension, and still runs against a brick wall in Mr. Taylor, he made a decision based on the need of a paramilitary organization to have obedience to order being an important element of the job. And that, maybe he would have won a labor arbitration, but he didn't do a labor arbitration. What it does not show is any evidence of race motivating this decision. And that's the essence of what Title VII requires a court to look at. Thank you, counsel. May I just add one more thing? Yes, certainly, Judge Wilmer. Mr. Murphy, I understand that the village argues that, you know, that Hughes, like Taylor, tried to help him to keep his job. But isn't that a question for a jury, not a finding that can be made by, as a matter of law, as a matter of law, we would say, yes, he liked him and he tried to help him. This court has at least twice since Ortiz says that pretext analysis is still applicable in Title VII cases. And there is no evidence to show that the decision which Mr. Hughes made, you were insubordinate, you violated the contract, and you have to be ultimately terminated for that agreement, for that reason, was pretextual. There's nothing that would show that, Your Honor. Thank you. Thank you, counsel. How much time? You have one minute. Thank you, Judge. I think the CBA issue really is a red herring, Judge. The question is whether Mr. Taylor refused to follow an instruction by Mr. McCullough. CBA does not require blood tests. That's Mr. Murphy's inference. But in any event. It requires confirmatory tests, of which blood tests are the only kind. I'm not sure that Mr. McCullough admitted that he had no idea what to do. He had never ordered a blood test. I don't believe. I think the facts are clear that he did not even refer to the collective bargaining agreement. The collective bargaining agreement says an order must be in writing, and the writing here said alcohol test. It didn't say blood test. So I don't think none of the parties were contemplating the collective bargaining agreement. McCullough, in fact, directed that there be a blood test, whether he did so in writing or not. He told the nurse to do a blood test. I'm sorry, Your Honor, but he admitted in his deposition that he did not. I think it's a funny conception of kindness to fire someone, and that's what Pelley's counsel would have this court believe. Mr. Hughes admitted, I didn't have to fire him. He could have chosen to suspend him. Instead, he pushes him to take a last chance agreement that said, you could be fired at any time if you screw up. That's what he wanted Mr. Taylor signed. He could have suspended him. It was within his choice. He didn't do so. He admitted. No one wanted him fired. I didn't have to fire him. I did. That's not kindness. That's part of a longstanding plan to eradicate African Americans from this fire department, and they did. And the facts that I've shown before show that there was a pretext. This was not in subordination. Hughes, McCullough didn't fire him. The fact that McCullough is black is absolutely no bearing on this issue. McCullough didn't fire him. No one was calling for his discharge. Hughes didn't bother to take a look at these facts. Didn't talk to anyone who was involved. And didn't look at Taylor's allegations of racism. You know what? I knew you were guilty. I'm going to fire you. That's kindness. Thank you. Thanks, Your Honor. Thanks to both counsel. The case will be taken under advisement.